UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

MERCEDES GIBBS,

    **Plaintiff,**                                    **JURY TRIAL DEMANDED**

v.

THE CONNOR GROUP, A REAL
ESTATE INVESTMENT FIRM, LLC,

    **Defendant.**
_____/

## COMPLAINT

Plaintiff Mercedes Gibbs ("Plaintiff"), by and through undersigned counsel, sues Defendant The Connor Group, A Real Estate Investment Firm, LLC ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### JURISDICTION, AND VENUE

1. Plaintiff brings this action against Defendant, in part, for violating 42 U.S.C. § 3601 *et seq.*, the Fair Housing Act. As such, jurisdiction of this Court exists for the Fair Housing Act claim under 28 U.S.C §1331.

2. Plaintiff brings this action against Defendants, in part, for violating BROWARD COUNTY, CODE ch. 16½-35. Defendants' conduct underlying this violation also forms the basis of Defendants' Fair Housing Act violation. As such, supplemental jurisdiction exists for this violation under 28 U.S.C. §1367.

3. This Court has personal jurisdiction over Defendant and venue is proper in this District

1

because the subject property is located in this District, Defendant transacts business in this District, and the complained conduct of Defendant occurred in this District.

## PARTIES

4. Plaintiff is a natural person and a citizen and resident of Florida.

5. Defendant is an Ohio limited liability company with its principal place of business located in Miamisburg, Ohio.

## DEMAND FOR JURY TRIAL

6. Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## FACTS

7. The federal Housing Choice Voucher program is the federal government's major program for assisting very low-income families, the elderly, and individuals with disabilities in affording decent, safe, and sanitary housing in the private rental market.

8. Congress established the Housing Choice Voucher program (formerly known as the Section 8 Existing Housing Program) as part of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, Title II, § 201(a), 88 Stat. 633, 662-66, now codified at 42 U.S.C. § 1437f, and Housing Community Development Act of 1987, Pub. L. No. 100-242, § 143, 101 Stat. 1814, 1850 (1988), codified as amended at 42 U.S.C. § 1437f(o); see also 24 C.F.R. §§ 982.1 et seq.

9. The United States Department of Housing and Urban Development ("HUD") provides Housing Choice Voucher program funding to local public housing authorities ("PHAs"), which administer the Housing Choice Voucher program locally and issue vouchers to qualified individuals and families.

10. Participants in the Housing Choice Voucher program use vouchers to find their own housing in the private rental market, including single-family homes, townhouses, and apartments.

Participants are free to choose any housing that meets the program's requirements and are not limited to units located in subsidized housing projects. A housing subsidy is paid to the landlord directly by the PHA on behalf of the participant. The participant then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program.

11. Florida has a current estimated population of 21,781,128 people. The population is approximately 15.1 percent African American or Black (not Hispanic) and 57.7 percent White (not Hispanic). There are an estimated 7,775,190 households in Florida, which are an estimated 15.8 percent African American or Black (not Hispanic) and 79.0 percent White (not Hispanic).

12. An estimated 198,481 households in Florida currently participate in the Housing Choice Voucher program.

13. In Florida, African-American households are overrepresented in the households participating in the Housing Choice Voucher program. Whereas African-American/Black households comprise 15.8 percent of all households in Florida, they make up 52.0 percent of Housing Choice Voucher program participants. In contrast, only 26 percent of participating households are White (not Hispanic), although white households comprise 79.0 percent of all households in Florida.

14. Florida residents who participate in the Housing Choice Voucher program are largely concentrated in predominantly African-American neighborhoods.

15. In or about January 2024, Plaintiff filled out a form on Apartments.com to schedule a tour (the "Tour") of an available apartment unit at The Villas at Wyndham Lakes (the "Apartment"). The Apartment is located at 11500 NW 56th Dr, Coral Springs, FL 33076

16. From about January 11, 2024, to January 30, 2024, Defendant called Plaintiff *several* times to schedule the Tour, as reflected by the following screenshot:



17. From about January 11, 2024, to January 30, 2024, Defendant also sent Plaintiff *several* text messages confirming the Tour, as reflected by the following screenshots:





      18.     Plaintiff, equally eager to tour the Apartment, specifically set aside time to schedule the Tour.

      19.     On or about February 2, 2024, Plaintiff arrived at The Villas at Wyndham Lakes and was greeted by someone acting as an agent and/or employee of Defendant (the "Agent").

      20.     Plaintiff, excited about viewing the Apartment, began to speak to the Agent about the Tour and asked if Defendant accepted Housing Choice Vouchers.

      21.     The Agent's demeanor immediately changed, and she ordered Plaintiff to stay put while she attempted to ask a supervisor in the management office (the "Supervisor"). Upon information and

belief, the Supervisor is also an agent and/or employee of Defendant.

22. Soon thereafter, the Supervisor spoke with Plaintiff directly and told Plaintiff that Defendant did not accept Housing Choice Vouchers.

23. Plaintiff immediately asked if she was still able to take part in the Tour, which had been scheduled before Plaintiff disclosed her status as a Housing Choice Voucher holder. The Supervisor said no. Plaintiff inquired why, and the Supervisor stated that there were no units available to tour.

24. Plaintiff asked about the Tour, which was previously scheduled with respect to the Apartment. However, the Supervisor replied that if Plaintiff wanted to tour the Apartment, she should go online to their website.

25. Overall, what began as a friendly encounter to tour the Apartment, with both sides equally willing and able to do so, quickly became an unpleasant rejection when Plaintiff disclosed her status as a Housing Choice Voucher holder.

26. Defendant's refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans. Defendant's discriminatory policies also harm the neighborhoods in which African-American/Black residents are statistically more likely to live, and impermissibly "red line" those neighborhoods by refusing to accept Housing Choice Vouchers. These harms all run counter to the Alliance's central goals.

27. Plaintiff has been injured by Defendant's discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to, lost time in travelling to Defendant's property for the Tour, lost time in having to find alternative housing accommodations, and shame and embarrassment from being rejected from rental purely due to status as a Housing Choice Voucher holder.

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT
(DISPARATE IMPACT)

28. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-27 as if fully set forth herein.

29. As set forth above, Defendant's refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans.

30. As a result, Defendant's practice and/or policy to refuse to accept Housing Choice Vouchers results in a significantly disproportionate impact on the basis of race (for African-American/Black individuals and households).

31. Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers, if facially neutral, has had and continues to have a discriminatory effect on African-American/Black individuals and households in Florida because these protected groups (*i.e.*, African-American/Black individuals) are disproportionately more likely to participate in the Housing Choice Voucher program as compared to the relevant non-protected groups, whereby refusing to accept Housing Choice Vouchers makes rental housing unavailable to these protected groups in violation of the Fair Housing Act, 42 U.S.C. § 3604(a). Defendant's refusal to accept Housing Choice Vouchers predictably and disproportionately harms these groups.

32. Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers also predictably or disproportionately harms neighborhoods in Florida where African-American/Black households are statistically more likely to live.

33. Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers does not have a substantial, legitimate, nondiscriminatory objective. Even if Defendant frames its

discriminatory practice as having some business purpose, other, less discriminatory alternatives are and have been available to Defendant to achieve that objective.

34. Plaintiff has been injured by Defendant's discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to, lost time in travelling to Defendant's property for the Tour, lost time in having to find alternative housing accommodations, and shame and embarrassment from being rejected from rental purely due to status as a Housing Choice Voucher holder.

35. Defendant's conduct was intentional, willful, and made in reckless disregard of the known rights of others.

36. **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

   a. Declare the actions of Defendant complained of herein to be in violation of the Fair Housing Act;

   b. Enter a permanent injunction enjoining Defendant, its successors, and its servants, agents, and employees, and all those acting in concert with it, from engaging in discrimination practices, such as the refusal to accept Housing Choice Vouchers;

   c. Enter a permanent injunction compelling Defendant, its successors, and its servants, agents, and employees, to participate in housing discrimination training;

   d. Award actual damages to Plaintiff against Defendant as applicable under the Fair Housing Act;

   e. Award Plaintiff their costs and reasonable attorneys' fees in this action;

   f. Enter a judgment in favor of the Plaintiff for the total amount of its damages, plus pre-judgment interest; and

   g. Award Plaintiff any further relief this the Court deems just and proper.

## COUNT II
## VIOLATION OF BROWARD COUNTY, CODE ch. 16½-35

37. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-6, 15-25, 27 as if fully set forth herein.

38. BROWARD COUNTY, CODE ch. 16½-35 provides, in pertinent part, that: "[i]t is unlawful for any person, including but not limited to any owner, lessee, lessor, sublessee, sublessor, assignee, assignor, manager, real estate broker, salesperson, condominium association, homeowners' association, cooperative association, or any representative of any of the foregoing: . . . [t]o refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, or otherwise to make unavailable or deny, a dwelling to any person because of a discriminatory classification . . . [or] [t]o represent to any person because of a discriminatory classification that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." BROWARD COUNTY, CODE ch. 16½-35 (emphasis added).

39. BROWARD COUNTY, CODE ch. 16½-3 defines "[d]iscriminatory classification" as: "a classification on the basis of race, color, religion, sex, national origin, age, marital status, political affiliation, familial status, disability, sexual orientation, pregnancy, gender identity or expression, veteran or service member status, *lawful source of income*, or because the individual is or has been the victim of dating violence, domestic violence, stalking, or human trafficking." *Id.* (emphasis added).

40. Further, BROWARD COUNTY, CODE ch. 16½-3 defines "[l]awful source of income" as "the origin or cause of a legal gain or recurrent benefit, often measured in money or currency, including, but not limited to, income derived from social security, supplemental security income, child support, alimony, veteran's benefits, disability benefits, unemployment, pension and retirement benefits, an annuity, a gift, an inheritance, the sale or pledge of or interest in property,

or any form of federal, state, or local public, food, or housing assistance or subsidy, including assistance from the Supplemental Nutrition Assistance Program (SNAP) and ***the Housing Choice Voucher Program or "Section 8" vouchers***, whether such income is received directly or indirectly by the renter or purchaser and even if such income includes additional federal, state, or local requirements." *Id.* (emphasis added).

41. As described above, Defendant, by and through the actions and inactions of the Agent and the Supervisor, outright denied Plaintiff from renting the Apartment purely because of Plaintiff's status as a Housing Choice Voucher holder. Further, Defendant, by and through the Supervisor, represented to Plaintiff, because of Plaintiff's status as a Housing Choice Voucher Holder, that the Apartment was not available for rental, when the Apartment was in fact so available. The Apartment was so available because of, in part, Defendant's willingness and eagerness to schedule the Tour for the Apartment.

42. **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

   a. Declare the actions of Defendant complained of herein to be in violation of BROWARD COUNTY, CODE ch. 16½-35;

   b. Enter a permanent injunction enjoining Defendant, its successors, and its servants, agents, and employees, and all those acting in concert with it, from engaging in discrimination practices, such as the refusal to accept Housing Choice Vouchers;

   c. Enter a permanent injunction compelling Defendant, its successors, and its servants, agents, and employees, to participate in housing discrimination training;

   d. Award compensatory damages to Plaintiff against Defendant as applicable under BROWARD COUNTY, CODE ch. 16½-35;

   e. Award Plaintiff their costs and reasonable attorneys' fees in this action;

   f. Enter a judgment in favor of the Plaintiff for the total amount of its damages, plus pre-judgment interest; and

   g. Award Plaintiff any further relief this the Court deems just and proper.

Date:  August 30, 2024.

          Respectfully Submitted,

          /s/ Gerald D. Lane, Jr.
          **JIBRAEL S. HINDI, ESQ.**
          Florida Bar No.: 118259
          E-mail: jibrael@jibraellaw.com
          **ZANE C. HEDAYA, ESQ.**
          Florida Bar No.: 1048640
          E-mail: zane@jibraellaw.com
          **GERALD D. LANE, JR., ESQ.**
          Florida Bar No.: 1044677
          E-mail: gerald@jibraellaw.com
          The Law Offices of Jibrael S. Hindi
          110 SE 6th Street, Suite 1744
          Fort Lauderdale, Florida 33301
          Phone: 954-907-1136

          *COUNSEL FOR PLAINTIFF*